2020 WI App 63

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:          2019AP882

†Petition for Review filed;
Petition for Cross-Review filed

Complete Title of Case:

**CITY OF MAYVILLE,**

**PETITIONER-RESPONDENT,**

**V.**

**STATE OF WISCONSIN DEPARTMENT OF ADMINISTRATION,**

**RESPONDENT-APPELLANT,†**

**VILLAGE OF KEKOSKEE,**

**RESPONDENT-CO-APPELLANT.†**

| | |
|---|---|
| Opinion Filed: | September 3, 2020 |
| Oral Argument: | June 30, 2020 |

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Kloppenburg, and Graham, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Clayton P. Kawski*, assistant attorney general, and *Joshua L. Kaul*, attorney general.  There was oral argument by *Clayton P. Kawski*. |
| | On behalf of the respondent-co-appellant, the cause was submitted on the briefs of *Matthew Parmentier* of *Dempsey, Edgarton, St. Peter, Petak & Rosenfeldt*, Fond du Lac.  There was oral argument by *Matthew Parmentier*. |

Respondent
ATTORNEYS:      On behalf of the petitioner-respondent, the cause was submitted on the
brief of *James W. Hammes* of *Cramer, Multhauf & Hammes, LLP*,
Waukesha.  There was oral argument by *James W. Hammes*.

COURT OF APPEALS
DECISION
DATED AND FILED

September 3, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP882**

STATE OF WISCONSIN

Cir. Ct. No. 2018CV527

IN COURT OF APPEALS

---

CITY OF MAYVILLE,

   PETITIONER-RESPONDENT,

 V.

STATE OF WISCONSIN DEPARTMENT OF ADMINISTRATION,

   RESPONDENT-APPELLANT,

VILLAGE OF KEKOSKEE,

   RESPONDENT-CO-APPELLANT.

---

APPEAL from an order of the circuit court for Dodge County: JOSEPH G. SCIASCIA, Judge. *Affirmed and cause remanded with directions*.

Before Fitzpatrick, P.J., Kloppenburg, and Graham, JJ.

¶1 KLOPPENBURG, J. This case concerns a cooperative plan (the Plan) prepared pursuant to WIS. STAT. § 66.0307 (2017-18)[1] by the Village of Kekoskee and the Town of Williamstown and approved by the Department of Administration (the Department). The Village of Kekoskee is surrounded wholly by the Town of Williamstown's territory. The Plan provides in pertinent part for: (1) the "attachment" by the Village of Kekoskee of all territory located in the Town of Williamstown by eliminating the boundary between the Village of Kekoskee and the Town of Williamstown, resulting in the elimination of the Town of Williamstown; (2) the renaming of the newly expanded Village of Kekoskee as the "Village of Williamstown"; and (3) the creation of a "Village of Williamstown Detachment Area" in portions of what would be the newly expanded Village territory that are "adjacent and proximate" to the City of Mayville.

¶2 The City of Mayville, which is also surrounded wholly by the Town of Williamstown's territory, and which under the Plan would instead be wholly surrounded by Village territory, sought judicial review of the Department's approval of the Plan.[2] The circuit court determined that Mayville has standing to seek judicial review of the Department's approval of the Plan. The court also determined that the Department erroneously approved the Plan because WIS. STAT. § 66.0307 "does not allow a Village to absorb an entire Township [as stated

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise stated.

[2] In this opinion, for ease of reading, we will generally refer to the Village of Kekoskee as it exists before execution of the Plan as "the Village," to the Town of Williamstown as it exists before execution of the Plan as "the Town," and to the Village of Williamstown as it would exist upon execution of the Plan as "the Village of Williamstown." We will refer to the City of Mayville as "Mayville."

in the Plan]." Therefore, the circuit court reversed the Department's decision approving the Plan and remanded the case to the Department.

¶3 The Village and the Department appeal the circuit court's determinations regarding both Mayville's standing and Mayville's challenge to the Department's approval of the Plan. We conclude that Mayville has standing under the applicable judicial review statutes, WIS. STAT. §§ 227.52 and 227.53, because it is aggrieved by the Department's decision approving the Plan in that Mayville's statutory right to be made a party to the Plan was violated. We also conclude that the Department made an error of law in approving the Plan because the Plan does not comply with WIS. STAT. § 66.0307(2). Specifically:

> (1) WISCONSIN STAT. § 66.0307(2) requires that a municipality whose boundary is changed or maintained by a cooperative plan under that section must be a party to the cooperative plan;

> (2) "change" to a "boundary" or "boundary line" as used in WIS. STAT. § 66.0307 means the physical alteration of, or difference in a geographic line or demarcation of, the limits of an area;[3]

---

[3] The pertinent statutory provisions use the terms "boundary" and "boundary line" interchangeably. *See, e.g.,* WIS. STAT. § 66.0307(2), which is entitled "Boundary Change Authority" and provides that "no boundary … may be changed … under this section" but also that municipalities may determine the "boundary line" between themselves; § 66.0307(5)(c)5., which refers to "boundary change"; and paragraphs (2)(a)-(c), which refer to "boundary line change." At oral argument, the Village asserted that there is no express or implied difference in meaning between the two terms; nor did Mayville in response articulate any discernible difference. As we discuss below, our resort to the ordinary dictionary definitions of the words "boundary" and "line" confirms that the two terms as used in § 66.0307 have the same meaning. Except when we quote from the language used in the statute, we will for ease of reading in our discussion generally use the term "boundary line."

(3) WISCONSIN STAT. § 66.0307(2) also states that a cooperative plan shall provide one or more of four delineated means by which a boundary line may be changed or maintained, and paragraphs 66.0307(2)(b) and (c) specify two of those means, consisting of optional boundary line changes that may occur subject to conditions set forth in the cooperative plan;

(4) the Plan, through creation of the "Village of Williamstown Detachment Area", provides for optional changes to Mayville's boundary lines subject to the occurrence of conditions set forth in the Plan, but the Plan does not include Mayville as a party.

Accordingly, for reasons separate from those stated by the circuit court, we affirm the circuit court's order reversing the Department's decision and remand to the circuit court to remand to the Department for further proceedings consistent with this opinion.

## BACKGROUND

¶4     We present the following undisputed facts to provide context for the discussion that follows. We will state additional pertinent undisputed facts in our discussion of each issue.

¶5     To assist the reader, we include the following map of the affected territories prior to implementation of the Plan, which is Exhibit A of the Plan.



¶6      The unincorporated Town of Williamstown is located in Dodge County, Wisconsin.  In 1958, the Village of Kekoskee was incorporated from territory that had been a part of the Town; the territory of the Village is completely surrounded by territory of the Town.  The territory of Mayville is also completely surrounded by territory of the Town; Mayville does not share a border with the Village.

5

¶7    As we will explain in more detail, in 2018 the Village and Town submitted three versions of a proposed cooperative plan to the Department pursuant to WIS. STAT. § 66.0307, the last of which the Department approved. Mayville filed a petition for judicial review challenging the Department's approval of the Plan. The Department and the Village moved to dismiss the petition based on Mayville's lack of standing. The circuit court determined that Mayville has standing to bring this action and denied the motion to dismiss. After briefing and a hearing on the merits of Mayville's challenge, the court issued a comprehensive written decision and order reversing the Department's approval of the Plan based on its determination that § 66.0307 does not allow a cooperative plan "to be used to absorb an entire Township into a Village, as was done here." The circuit court remanded the case to the Department to implement the court's order and stayed the order pending this appeal.

## DISCUSSION

¶8    As stated, the Village and the Department appeal the circuit court's determinations that Mayville has standing to seek judicial review and that the Department erroneously approved the plan under WIS. STAT. § 66.0307. We address each issue in turn.

### I. Mayville has standing to pursue judicial review of the Department's decision.

¶9    We review de novo a motion to dismiss for lack of standing. *Town of Delavan v. City of Delavan, LLL*, 160 Wis. 2d 403, 410, 466 N.W.2d 227 (Ct. App. 1991).

¶10 WISCONSIN STAT. §§ 227.52 and 227.53(1) govern the issue of standing to seek judicial review of agency decisions. *Town of Delavan*, 160 Wis. 2d at 409. Pursuant to § 227.52, "[a]dministrative decisions which adversely affect the substantial interests of any person ... are subject to review as provided in [WIS. STAT. ch. 227]." Section 227.53(1) provides that "[e]xcept as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.52 shall be entitled to judicial review of the decision" subject to certain procedural requirements. Thus, in order to have standing to seek judicial review of an agency decision, a petitioner must be "aggrieved" by the decision, meaning that the petitioner must show that the decision has "a direct effect on [the petitioner's] legally protected interests." *Wisconsin's Envtl. Decade, Inc. v. PSC*, 69 Wis. 2d 1, 9, 230 N.W.2d 243 (1975).

¶11 In determining whether a party has been "aggrieved," we apply a two-part test. *Town of Delavan*, 160 Wis. 2d at 410. First, the petitioner must demonstrate that he or she sustained an injury as a result of an agency decision. *Id.* at 411. The "injury must not be hypothetical or conjectural, but must be 'injury in fact.'" *Id.* "Second, the petitioner must show that the injury is to an interest which the law recognizes or seeks to regulate or protect." *Id.*

¶12 Because, as discussed in the next section of this opinion, the Plan as approved has a direct effect on Mayville's statutory right to be made a party to the

7

Plan, Mayville has standing to seek judicial review of the Department's decision approving the plan.[4]

## II. The Department made an error of law in approving the plan because the plan does not comply with WIS. STAT. § 66.0307(2).

¶13    The Department and the Village argue that the Department properly approved the Plan because WIS. STAT. § 66.0307 authorizes cooperative plans, such as this one, that eliminate a common boundary line.  We need not, and do not, reach this general proposition because we conclude that, on the specific facts of this case, the Plan does not comply with the requirements in § 66.0307(2) as outlined above.  We summarize these requirements again for the reader's convenience:

> (1) WISCONSIN STAT. § 66.0307(2) requires that "[n]o boundary of a municipality may be changed or maintained under this section unless the municipality is a party to the cooperative [plan];"[5]

---

[4] Mayville alleged in its petition for judicial review that it is aggrieved by the Department's decision because, among other reasons, the Plan extinguishes Mayville's extraterritorial zoning and plat approval rights conferred under WIS. STAT. chs. 62 and 236.  *See* WIS. STAT. §§ 62.23 and 236 (limiting a city's extraterritorial zoning and plat approval jurisdiction to unincorporated lands in adjacent townships).  The Department acknowledged at oral argument that, before the Plan, Mayville had statutory extraterritorial zoning and plat approval authority over areas within the Town; under the Plan, Mayville would lose that authority.  We do not address this argument based on Mayville's loss of these statutory rights, or the other reasons that Mayville alleged to show it is aggrieved, or the Department's and the Village's arguments regarding those other reasons, because we conclude that the reason identified in the text suffices to show standing.  *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

(2) "change" to a "boundary" or "boundary line" as used in WIS. STAT. § 66.0307 means the physical alteration of, or difference in a geographic line or demarcation of, the limits of an area;

(3) WISCONSIN STAT. § 66.0307(2) also states that a cooperative plan shall provide one or more of four delineated means by which a boundary line may be changed or maintained, and paragraphs 66.0307(2)(b) and (c) specify two of those means, consisting of optional boundary line changes that may occur subject to conditions set forth in the cooperative plan;

(4) the Plan through creation of the "Village of Williamstown Detachment Area" provides for optional changes to Mayville's boundary lines subject to the occurrence of conditions set forth in the Plan, but the Plan does not include Mayville as a party.

Accordingly, the Department made an error of law in approving the Plan.

¶14　We first set forth the applicable standard of review and statutory provisions, next summarize additional pertinent background, and then explain why

---

[5] WISCONSIN STAT. § 66.0307(2) in this quoted instance uses the phrase "cooperative agreement" instead of "cooperative plan." The parties make no argument asserting that this single use of the phrase "cooperative agreement" in WIS. STAT. ch. 66 differs in any meaningful way from the dozens of instances in which the chapter uses "cooperative plan" or "plan." Moreover, the Department and the Village themselves use "cooperative plan" and "agreement" interchangeably to refer to the Plan, and Mayville does not dispute this characterization. Additionally, the Department in its July 18, 2018 letter to Mayville described the Plan as a "pending cooperative plan boundary agreement between the Town … and Village …." We follow the parties' lead in construing "cooperative agreement" as identical to "cooperative plan."

we conclude that the Plan fails to comply with statutory requirements, mandating reversal of the Department's decision approving it.

## A. Applicable Standard of Review and Statutory Provisions.

¶15    "Judicial review of a decision by an administrative agency requires that this court review the decision of the agency, not the circuit court." ***Town of Holland v. Public Serv. Comm'n of Wis.***, 2018 WI App 38, ¶21, 382 Wis. 2d 799, 913 N.W.2d 914.  Although we review the decision of the agency, not the circuit court, we affirm or reverse the order of the circuit court.  ***Id.***

¶16    In its petition for judicial review, Mayville did not challenge the Department's factual findings; nor do the parties on appeal identify any factual findings in dispute.  Rather, this appeal concerns whether the Department erred in applying the cooperative plan statute to the undisputed facts of record.  That question is one of law that we review de novo.  *See **Town of Holland***, 382 Wis. 2d 799, ¶23 (application of a statute to the facts is a question of law that we review de novo).  As provided in WIS. STAT. § 227.57(10) and (11), although we accord no deference to the Department's conclusions of law, we do accord "due weight" to its "experience, technical competence, and specialized knowledge."

¶17    The answer to the question at issue depends on what the applicable statute means, which is also a question of law that we review de novo.  ***State v. Stewart***, 2018 WI App 41, ¶18, 383 Wis. 2d 546, 916 N.W.2d 188.  We give statutory language "its common, ordinary, and accepted meaning."  ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.  We also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of

surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.

¶18     We must "set aside or modify the agency action if [the court] finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or [the court] shall remand the case to the agency for further action under a correct interpretation of the provision of law." WIS. STAT. § 227.57(5).

¶19     WISCONSIN STAT. § 66.0307 authorizes municipal boundary line changes pursuant to approved cooperative plans. Subsection (2) of the statute, entitled "Boundary Change Authority," provides that:

> [a]ny combination of municipalities may determine the boundary lines between themselves under a cooperative plan that is approved by the department under this section … No boundary of a municipality may be changed or maintained under this section unless the municipality is a party to the cooperative [plan].

Sec. 66.0307(2). That subsection continues, "The cooperative plan shall provide one or more of the following", and then sets forth four means by which a plan may provide for a boundary line change, including no change. Sec. 66.0307(2)(a)-(d). We review these four paragraphs in greater detail in the analysis below.

¶20     Subsection (5) of the statute, entitled "Department Review and Approval of Local or Cooperative Plan," provides in pertinent part that the Department shall approve a cooperative plan if it determines that the plan "is consistent with … current state laws." WIS. STAT. § 66.0307(5)(c)2.

11

## B. Additional Pertinent Background.

¶21    *Initial Plan.*  In January 2018, the Village and the Town agreed to a proposed cooperative plan that provided for the attachment by the Village of all of the Town's territory through the elimination of the boundary line between them. According to the proposed plan, the Town would be eliminated and the Village would then rename itself the Village of Williamstown.  Mayville was not a party to the proposed plan.

¶22    After the Village and the Town submitted the proposed plan to the Department, Mayville requested and appeared at a public hearing pursuant to WIS. STAT. § 66.0307(5)(b), and at that time Mayville expressed opposition to the proposed plan.  The Department subsequently determined that none of the statutory criteria for a cooperative plan under § 66.0307(5) were "currently met, but that with additional information and revisions, they could all be met" and returned the proposed plan to the Village and the Town.[6]

---

[6] The criteria that the Department must determine are met by a cooperative plan are:

> 2. The cooperative plan is consistent with each participating municipality's comprehensive plan and with current state laws, municipal regulations, and administrative rules that apply to the territory affected by the plan.
>
> 3. Adequate provision is made in the cooperative plan for the delivery of necessary municipal services to the territory covered by the plan.
>
> 5. The shape of any boundary maintained or any boundary change under the cooperative plan is not the result of arbitrariness and reflects due consideration for compactness of area ….

(continued)

¶23 Among other recommended revisions, the Department suggested that the plan better articulate and provide for "adequate provision for delivery of necessary services to the Cooperative Plan territory," including that the Village and Town "revise the Cooperative Plan to provide territory adjacent and proximate to the City [of Mayville] the opportunity to receive higher level services should landowners desire that." The Department provided the following three "options" for how the Village and Town could implement this recommendation: (1) revise the plan "to designate areas for urban growth and higher services levels"; (2) revise the plan "so that instead of the Town attaching into the Village, the Village could attach into the Town"; or (3) develop a cooperative plan with Mayville. In its analysis of the plan's consideration of "compactness," the Department suggested that the Village and Town consider "designat[ing] a sufficiently-sized area adjacent to the City of Mayville where [attachment] to the City will occur should landowners desire higher density development and services."

¶24 *First Revised Plan.* In July 2018, the Village and the Town submitted to the Department a revised proposed plan, and Mayville filed a letter opposing it. The revised plan included a number of new provisions, including a new section 24 detailing a "City Growth Area," created "[i]n order to provide for future growth for the City of Mayville, and to ensure that owners of territory adjacent and proximate to the City of Mayville have the opportunity to receive

---

6. Any proposed planning period exceeding 10 years is consistent with the plan.

WIS. STAT. § 66.0307(5)(c).

higher level services through the City of Mayville." The City Growth section of the revised plan specified that:

> [u]pon completion of the [aforementioned boundary changes between the Village and the Town] … [the Village and the Town] *hereby agree that they will not object to, and will take all action necessary to effectuate the detachment of territory from within the City of Mayville Growth Area to the City of Mayville*, provided that each detachment involves territory that is contiguous with the City of Mayville and provided that the City obtains unanimous consent for the detachment from the owners of all property subject to detachment. [*Id.*] (Emphasis added.)

The proposed "City of Mayville Growth Area" was approximately 1,921 acres in size, which, if all the area were detached from the Village of Williamstown and attached to Mayville, would roughly double the existing area of Mayville. The revised plan did not include Mayville as a party.

¶25 The Department returned the revised plan to the Village and the Town with additional recommended revisions, including that the Village and the Town remove the section 24 unanimity requirement and instead provide that detachment may occur via WIS. STAT. § 66.0227, and that the plan make "clear" that the "City of Mayville Growth Area" is intended for the benefit of landowners in the Growth Area.

¶26 *Second Revised Plan.* In September 2018, the Village and the Town submitted a second revised proposed plan to the Department, which Mayville again opposed and which the Department approved. Pertinent to this appeal, the second revised plan incorporates many of the Department's recommendations, resulting in a renamed and amended section 24, "Village of Williamstown Detachment Area" (which we generally refer to as the Village Detachment Area), which provides that "[i]n order to ensure that owners of territory adjacent and

proximate to the City of Mayville will have the opportunity to receive higher level services through the City of Mayville," the Village "will not object to, and will take action necessary to effectuate[] the detachment of territory from within the Village of Williamstown Detachment Area" provided the territory is contiguous to Mayville, and provided that "the petition for detachment meets the requirements of WIS. STAT. § 66.0227 as they exist on the effective date of this Plan." The second revised plan also states that "Section 24 … will remain in effect until December 31, 2118 unless the Village of Williamstown and the City of Mayville … agree otherwise."[7] The second revised plan also does not include Mayville as a party. The Department approved the second revised plan, which is the Plan that is the subject of this appeal.

¶27    The Plan states that it "is consistent with current state and federal law … [and] will be interpreted consistent with applicable law." In its approval, the Department determined that the consistency requirement of WIS. STAT. § 66.0307(5)(c)2 was met, noting that the Plan contains "language confirming its consistency with existing State, Federal, and local laws."

*C. Analysis.*

*1. Party requirement in WIS. STAT. § 66.0307(2).*

¶28    As noted, WIS. STAT. § 66.0307(2) provides that municipalities may determine boundary lines between them under a cooperative plan and requires that "[n]o boundary of a municipality may be changed or maintained under this section

---

[7] The "proposed planning period" may exceed ten years if approved by the Department. WIS. STAT. §§ 66.0307(5)(c) and 66.0307(3)(f).

unless the municipality is a party to the cooperative [plan]" that determines that boundary. The parties at oral argument agreed that the Plan does not maintain Mayville's boundary lines as that term is used in the applicable statutes, and that the issue on appeal is whether the Plan changes Mayville's boundary lines.

### 2. *Meaning of "change" to a "boundary line".*

¶29    We first interpret the term "change" as used in WIS. STAT. § 66.0307(2). Because this term is not expressly defined in that statute, we refer to its dictionary definition for its meaning. *See Kalal*, 271 Wis. 2d 633, ¶¶45, 53 ("statutory language is given its common, ordinary, and accepted meaning," which is "ascertainable by reference to the dictionary definition"); *Brown Cty. Human Servs. v. B.P.*, 2019 WI App 18, ¶12, 386 Wis. 2d 557, 927 N.W.2d 560 (stating that to help establish the common, ordinary, and accepted meaning of an undefined term, we can look to a recognized dictionary).

¶30    At its most basic, "change" means "to make different …: alter." *Change*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 373 (1993). *See also Change*, BLACK'S LAW DICTIONARY, 231 (6th ed. 1990) ("alter…make different in some particular"). The question then is what it means to "alter" or make a municipal boundary "different" in order to effectuate a "change" to a "boundary line" under WIS. STAT. § 66.0307.

¶31    At oral argument, the parties made clear their opposing answers to that question. The Village and the Department argued that a "change" to a "boundary line" refers to a physical difference in the geographic boundary line or limits of a municipality. Mayville argued that a "change" to a "boundary line" includes a difference in the type of municipality on either side of a physically

unaltered geographic boundary line. On this point, we agree with the Village and the Department for the reasons we now discuss.

¶32     We begin with the dictionary definitions of "boundary" and "line." The dictionary definition of "boundary" is: "a real … line marking the limits of an area, territory, etc." *Boundary*, THE OXFORD DICTIONARY AND THESAURUS, 161 (American ed. 1996). *See also Boundary*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 260 (1993) ("something that indicates or fixes a limit); *Boundary*, AMERICAN HERITAGE COLLEGIATE DICTIONARY, 164 (1993) ("something indicating a border or limit"); *Boundary*, BLACK'S LAW DICTIONARY, 222 (10th ed. 2014) ("[a] natural or artificial separation that delineates the confines of real property"). Under its dictionary definition, "boundary" means a physical line that marks the geographic limits of an area. The pertinent dictionary definition of "line" is: "a continuous mark or band made on a surface … a limit or boundary." *Line*, THE OXFORD DICTIONARY AND THESAURUS, 872 (American ed. 1996). *See also Line*, AMERICAN HERITAGE COLLEGIATE DICTIONARY, 788 (1993) ("4.a. A border or boundary. b. A demarcation. c. A contour or an outline."). Taken together, these definitions indicate that, as the Village stated at oral argument, "'boundary line' means the line on the map…the physical line, not what happens to be on either side of it."

¶33     We next turn to the statute's subsections and other boundary line change statutes, which are consistent with this meaning. *See Kalal*, 271 Wis. 2d 633, ¶46 (stating that statutory language is to be interpreted "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes").

¶34 Subsection (2) of the statute, entitled "Boundary Change Authority," states that municipalities may, through a cooperative plan, "determine the *boundary line* between themselves." WIS. STAT. § 66.0307(2) (emphasis added). The subsection then proceeds to set out four different kinds of "*change*" (including no change) to a "*boundary line*" that a cooperative plan shall provide. Sec. 66.0307(2)(a)-(d) (emphasis added). Similarly, subsection (3), entitled "Cooperative Plan," directs the municipalities seeking to set the "*boundary lines*" between them to prepare a cooperative plan. Sec. 66.0307(3) (emphasis added). The use of the term "boundary line" in these subsections underscores the geographic nature of the thing to be changed.

¶35 Second, subsection (5) of the statute sets out the four determinations required for Department approval of a plan. WIS. STAT. § 66.0307(5)(c)5. One determination is that "the shape" of any boundary line change reflects "due consideration for compactness of area," based on considerations of "the quantity of land" affected by the boundary line change and the boundary line change's "compatibility ... with natural terrain including general topography, major watershed, soil conditions, and such features as rivers, lakes and major bluffs." Sec. 66.0307(5)(c)5. Consideration of these physical effects on the geography would be meaningless if "boundary" could include the type of municipality and if "boundary line change" could mean a difference in the type of municipality on one side of an unaltered geographic boundary line. Statutory interpretations that render provisions meaningless should be avoided. *See **Madison Metro. Sch. Dist. v. Circuit Ct.***, 2011 WI 72, ¶101, 336 Wis. 2d 95, 800 N.W.2d 442.

¶36 For these reasons, we conclude that in WIS. STAT. § 66.0307, the plain language meaning of the terms "boundary" and "boundary line" is the geographic demarcation of the limits of an area, and "change" to a "boundary line"

18

by its plain language means a physical alteration of, or difference in, that geographic demarcation.

### 3. Means to effectuate a "change" to a "boundary line" under WIS. STAT. § 66.0307(2).

¶37 We now turn to whether the Plan effectuates a physical alteration or difference with respect to the geographic demarcation of Mayville's boundary line. To answer this question, we first return to the statutory provisions that establish the means by which a plan may effectuate a boundary line change, and in the final section that follows we apply those provisions to the Plan.

¶38 The Village at oral argument asserted, and the Department agreed, with no disagreement by Mayville, that paragraphs (a)-(d) of WIS. STAT. § 66.0307(2) "are the actual operative provisions" that define how a boundary line is changed (or maintained) under a cooperative plan. Section 66.0307(2) states:

> The cooperative plan shall provide one or more of the following:
>
> (a) That specified boundary line changes shall occur during the planning period and the approximate dates by which the changes shall occur.
>
> (b) That specified boundary line changes may occur during the planning period and the approximate dates by which the changes may occur.
>
> (c) That a required boundary line change under par. (a) or an optional boundary line change under par. (b) shall be subject to the occurrence of conditions set forth in the plan.
>
> (d) That specified boundary lines may not be changed during the planning period.

Sec. 66.0307(2)(a)-(d).

19

### 4. *The Plan's provisions for a "change" to a "boundary line" with respect to Mayville.*

¶39    At oral argument, Mayville asserted that the Plan makes a physical change to Mayville's geographic boundary line within the meaning of the above-quoted paragraphs of WIS. STAT. § 66.0307(2) because the Plan provides for territory currently within the Town to come within the territory of Mayville through the Village Detachment Area provision.  On this point, as we now explain, we agree with Mayville.

¶40    To recap, the "Village Detachment Area" provides that, for the next one hundred years,[8] and if certain conditions are met, Mayville may expand its area through the detachment of territory from the Village of Williamstown.  The record indicates that the Department's approval of the Plan required the Plan's inclusion of the Village Detachment Area.  As stated above, the initial proposed plan provided for no such "growth" or "detachment" area, and the Department's review of that version of the plan identified the proposed plan's shortcomings as to the provision of adequate municipal services to persons living near Mayville.  The Department suggested that the Village and Town consider "designat[ing] a sufficiently-sized area adjacent to the City of Mayville where detachment to the City will occur should landowners desire higher density development and services."  It was only after the Village and Town designated the detachment area in subsequent revised plans that the Department ultimately approved the Plan.

---

[8] The "planning period" as used in WIS. STAT. § 66.0307 is the time the Plan is in effect. *See* § 66.0307(3)(f) and (5)(c).

¶41 There can be no dispute that the expansion of Mayville's area envisioned by the Village Detachment Area provision will physically alter Mayville's geographic city limits and, therefore, change Mayville's boundary line. By the terms of this provision, the Plan describes "specified boundary line changes [that] may occur during the planning period and the approximate dates by which the changes may occur" under Wis. Stat. § 66.0307(2)(b); therefore, those boundary line changes are "optional" as that term is used in § 66.0307(2)(c). Also, those boundary line changes are "subject to the occurrence of conditions set forth in the plan" under § 66.0307(2)(c) because they require that landowners request services from Mayville. If so, the Village has agreed in the Plan that it will not oppose such a request. Because the Plan comes within the purview of § 66.0307(2)(b) and (c) regarding Mayville's boundary line changes, Mayville is required to be a party to the Plan under § 66.0307(2). However, the Plan does not include Mayville as a party to the Plan, in violation of § 66.0307(2). Because the Plan is not in compliance with § 66.0307(2), the Department made an error of law when it determined that the Plan complies with state laws and approved the Plan.

¶42 We next explain why we reject the arguments of the Village and the Department to the contrary.

### 5. The Village's and the Town's arguments.

¶43 In its briefing, the Village argues that Mayville forfeited any challenge based on noncompliance with Wis. Stat. § 66.0307(2) because the circuit court did not address such a challenge. The Village does not contend that Mayville failed to raise this issue in the circuit court.

¶44 The Village states that the court "deemed this argument to be of 'no consequence' and [the argument] did not factor into its decision." That the circuit

court did not address such a challenge is irrelevant because we may affirm the court's ruling as to the legality of the Plan under an analysis that is different from that considered by the circuit court. *See Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 595, 530 N.W.2d 16 (Ct. App. 1995) ("[W]e may affirm on grounds different than those relied on by the [circuit] court."). Moreover, the issue is a legal question that we directed the parties to address at oral argument and that we review de novo.

¶45 The Village also argues that Mayville waived any challenge based on noncompliance with WIS. STAT. § 66.0307(2) because it did not cross-appeal the circuit court's ruling. However, a respondent need not cross-appeal on an issue rejected or not addressed by the circuit court when the respondent's argument regarding that issue would support the circuit court's decision. *See* WIS. STAT. § 809.10(2)(b); *see also Thomsen v. Wisconsin Employment Relations Comm'n*, 2000 WI App 90, ¶2 n.2, 234 Wis. 2d 494, 610 N.W.2d 155, citing *State v. Alles*, 106 Wis. 2d 368, 390, 316 N.W.2d 378 (1982) (A respondent need not file a cross-appeal if seeking an affirmance of the circuit court's order or judgment on other grounds, but must file a cross-appeal if seeking a modification of that order or judgment.)

¶46 At oral argument, the Village argued that the Mayville boundary line does not "change," even within the Village Detachment Area, because the "change is not occurring by virtue of section 24 [of the Plan]," but by virtue of the detachment statute, which, according to the Village, is the "vehicle" that would be needed to accomplish that change. This argument fails because it ignores the plain language in WIS. STAT. § 66.0307(2), which requires that a plan providing for a "change" of a municipality's boundary line must include that municipality as a party, even if the change will be "optional" subject to the occurrence of conditions

under § 66.0307(2)(b) and (c). Indeed, the Village conceded that the Village Detachment Area provision "contemplates changes" even though it does not "accomplish" changes. We do not see how the changes "contemplated" as specifically described in this provision do not fall within the ambit of the "optional" and "conditional" changes referenced in the statute that defines which municipalities must be parties.

¶47     The Department's argument in its briefing on this issue is limited to the following: "[T]he cooperative plan complied with WIS. STAT. § 66.0307(2). The parties to the agreement were the Town and the Village, the only entities whose boundaries changed. Mayville was not a party to the cooperative plan, and the plan did not change its boundaries." We reject this conclusory assertion, which ignores how the Plan provides for optional changes to the physical boundary line of Mayville subject to the occurrence of conditions set forth in the Plan, as described above.[9]

¶48     At oral argument, the Village stressed the importance of the availability of the cooperative plan "tool" for addressing circumstances where

---

[9] The Department's and the Village's remaining arguments in their briefing address the application of WIS. STAT. § 66.0307(2) to annexation ordinances adopted by the City. The parties also addressed those annexation ordinances at oral argument. We do not consider these arguments because our analysis of § 66.0307(2) does not involve the annexation ordinances.

municipalities "are on the verge of collapse."[10] The Department adds that it has over the past fifteen years approved cooperative plans that called for the attachment of town territory to an incorporated municipality by eliminating boundaries and cautions that reversing the Department's approval of this Plan "could call into question the validity of" some of these previously approved plans. The Village's and the Department's concern is not implicated here because, as indicated above, we do not address the parties' arguments about whether a cooperative plan under WIS. STAT. § 66.0307 may be used to eliminate a common boundary line between a village and a town (or, in the Village's words, "expand the boundary of the Village to encompass everything that had been Village and Town"). Nor have we concluded that the Plan here was erroneously approved on that basis. Rather, we conclude that, on the specific record of this case, the Plan prepared by the Village and the Town does not comply with the § 66.0307(2) requirement that the Plan include as a party each municipality whose boundary

---

[10] As the parties noted in their briefing and at oral argument, Wisconsin statutes provide multiple, alternative "boundary adjustment mechanisms." These alternatives, some of which Mayville argues should have been used here and which the Village and the Department argue are not appropriate for the circumstances here, include incorporation, annexation, detachment, consolidation, and dissolution. *See, e.g.,* WIS. STAT. §§ 66.0207 (incorporation by a village or city of unincorporated territories), 61.187 (dissolution of a village and reversion of the village to the unincorporated town from the village was originally incorporated), 66.02162 (incorporation of a town as a village), 66.0217 (annexation of town territory by a city or village by petition), 66.0219 (annexation of town property by a city or village by resolution and referendum), 66.0229 (consolidation of a town, village, or city with a contiguous town, village, or city by ordinance and referendum), 66.0230 (consolidation of all or part of a town with a contiguous city or village by ordinance and referendum), 66.0225 (fixing a common boundary line between two or more municipalities by stipulation), 66.0301 (determination of a common boundary line between two municipalities by written agreement), and 66.0307 (determination of boundary lines between any combination of municipalities by cooperative plan approved by the Department of Administration). *See also City of Kaukauna v. Village of Harrison*, 2015 WI App 73, 365 Wis. 2d 181, 870 N.W.2d 680 (reviewing some of these alternatives as not mutually exclusive). Our resolution of this appeal based on the Plan's compliance with the cooperative plan statute renders it unnecessary for us to reach the parties' arguments about these alternatives.

24

lines may optionally change "subject to the occurrence of conditions set forth in the plan." Sec. 66.0307(2)(b)- and (c).

¶49 Finally, at oral argument, the Village also argued that if any portion of the Plan is invalid, then the Plan "still stands." This argument is inapposite for two reasons. First, the Village made this argument with respect to a factual scenario that did not concern the Village Detachment Area. Second, we do not determine that any part of the Plan is invalid. Rather, we conclude only that the provisions of the Plan have repercussions such that Mayville was required to be a party to the Plan. Accordingly, we remand to the circuit court to remand to the Department for further proceedings consistent with this opinion.

## CONCLUSION

¶50 For these reasons, we affirm the circuit court's order reversing the Department's decision approving the Plan, and we remand with directions to remand to the Department for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed and cause remanded with directions.