# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP882 |

| | |
|---|---|
| COMPLETE TITLE: | City of Mayville,<br>      Petitioner-Respondent,<br>   v.<br>State of Wisconsin Department of Administration,<br>      Respondent-Appellant-Petitioner,<br>Village of Kekoskee,<br>      Respondent-Co-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 394 Wis. 2d 296,950 N.W.2d 925
PDC No:2020 WI App 63 - Published

| | |
|---|---|
| OPINION FILED: | June 11, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 8, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Dodge |
|   JUDGE: | Lynn M. Hron |

JUSTICES:
ROGGENSACK, J., delivered the majority opinion for a unanimous Court.
NOT PARTICIPATING:

ATTORNEYS:

For the respondent-appellant-petitioner, there were briefs filed by *Clayton P. Kawski*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Clayton P. Kawski*.

For the respondent-co-appellant-petitioner, there were briefs filed by *Matthew Parmentier* and *Dempsey Law Firm*, LLP. There was an oral argument by *Matthew Parmentier*.

For the petitioner-respondent, there was a brief filed by *James W. Hammes* and *Cramer, Multhauf & Hammes, LLP*, Waukesha. There was an oral argument by *James W. Hammes*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP882
(L.C. No. 2018CV527)

STATE OF WISCONSIN           :      IN SUPREME COURT

**City of Mayville,**

      **Petitioner-Respondent,**

     **v.**

**State of Wisconsin Department of Administration,**

      **Respondent-Appellant-Petitioner,**

**Village of Kekoskee,**

      **Respondent-Co-Appellant-Petitioner.**

**FILED**

**JUN 11, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ROGGENSACK, J., delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 PATIENCE DRAKE ROGGENSACK, J. We review a published decision of the court of appeals[1] affirming the order of the Circuit Court for Dodge County[2] that reversed the Department of

---

[1] *City of Mayville v. DOA*, 2020 WI App 63, 394 Wis. 2d 296, 950 N.W.2d 925.

[2] The Honorable Joseph G. Sciascia presided.

Administration's (the "Department") approval of a cooperative plan (the "Plan") between the Village of Kekoskee (the "Village") and the Town of Williamstown (the "Town") and remanded the matter back to the Department. The circuit court determined that the cooperative plan statute, Wis. Stat. § 66.0307 (2017-18),[3] did not permit municipalities to use cooperative plans to "absorb an entire Town[] into a Village." The court of appeals affirmed on modified grounds concluding that the Plan "changed" the City of Mayville's ("Mayville") boundary line such that Mayville was required to be a party to the Plan.

¶2 We conclude first that Mayville has standing to seek judicial review of the Plan. Next, we conclude that the "Village of Williamstown Detachment Area" set forth in the Plan changes Mayville's boundary line. Because the Plan changed Mayville's boundary line, Wis. Stat. § 66.0307(2) required that Mayville be a party to the Plan. Mayville was not a party to the Plan, therefore, we conclude that the Department erroneously interpreted § 66.0307(2) in approving the Plan. Accordingly, we affirm the decision of the court of appeals, which remanded the Plan to the circuit court to remand to the Department.

---

[3] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

2

I. BACKGROUND

¶3 The Town, the Village and Mayville are located in Dodge County. The Village, which was incorporated from a portion of the Town in 1958, is completely surrounded by the Town's territory. Likewise, Mayville also is surrounded completely by the territory of the Town; however, Mayville does not share a border with the Village. The Town is unincorporated.

¶4 The Village, having difficulty recruiting enough residents to comprise a full village board, notified the Town in 2015 that it was considering dissolution. Representatives from the Village and the Town met to consider alternatives. After discussions, they decided to consolidate the territories of the two municipalities. The municipalities concluded that they could consolidate by entering into a cooperative plan pursuant to Wis. Stat. § 66.0307.

¶5 The two municipalities each adopted resolutions declaring their intent to adopt a cooperative plan, submitted the resolutions and copies of the drafted plan to the Department, and notified Mayville and the other surrounding municipalities. The mayor of Mayville wrote back to the Town stating that "Mayville would be glad to work with you on a cooperative plan." Mayville, however, who was not a party to the plan, was not involved until the Department conducted a public hearing regarding the proposed cooperative plan. At the public hearing, the Town and the Village provided documentation

in support of their proposed cooperative plan, and Mayville provided information in opposition.

¶6 The Town and the Village submitted a second plan to the Department for its approval. In May of 2018, the Department wrote to the municipalities, informing them that the second plan failed to "meet any of the statutory criteria."

¶7 Of particular concern for the Department was the second plan's insufficient provision of services such as Emergency Medical Services and sewer, especially in the area that is directly adjacent to Mayville, and the second plan's insufficient consideration of compactness.[4] The Department "recommend[ed] that the [Town and Village] revise the [c]ooperative [p]lan to provide territory adjacent and proximate to [Mayville] the opportunity to receive higher level services should landowners desire that." The Department suggested, among other things, that the Village consolidate into the Town, which would leave the area surrounding Mayville unincorporated or the plan establish "designate[d] areas for urban growth and higher service levels."

¶8 The Department permitted the Village and the Town to revise the second plan and resubmit it. The parties submitted a third plan, which Mayville once again opposed. The Department found that the third plan again failed to meet several of the

---

[4] Both provision of services and compactness are statutorily mandated components of a cooperative plan adopted under Wis. Stat. § 66.0307. See §§ 66.0307(5)(c)3., 5.

statutory criteria. This pattern repeated once more: the Village and the Town resubmitted a cooperative plan, Mayville opposed, but this time, the Department found that the final submission for a cooperative plan met the statutory criteria and approved it.

¶9 Under the Plan, "the Boundary Change will involve the attachment by the Village of all territory located in the Town as of the effective date of the Plan." "As soon as practicable upon completion of the Boundary Change, the Village will take those actions necessary to change its name from 'Village of Kekoskee' to 'Village of Williamstown.'" To address the Department's concern regarding the draft plans' insufficient provision of services, the approved Plan, via Section 24, creates a "Village of Williamstown Detachment Area."[5] Section 24 created an area that purported to be detachable from the Village of Williamstown and attachable to Mayville.

¶10 After the Department approved the Plan, Mayville filed a petition for judicial review in Dodge County circuit court pursuant to Wis. Stat. § 227.52. The Department and the Village filed a motion to dismiss, arguing that Mayville did not have standing to challenge the Department's decision approving the Plan. The circuit court denied the motion and concluded that Mayville had standing.

---

[5] Section 25 of the Plan, which addresses compactness, is also relevant to our analysis. Sections 24 and 25 are discussed in greater detail below. See infra ¶¶32-35.

5

¶11 On the merits, the question for the circuit court was "whether . . . [Wis. Stat. §] 66.0307 can be used to dissolve a Town and attach its territory to a Village." The circuit court concluded that, in part because there are other statutes that could achieve the municipalities' desired results, § 66.0307 did not permit "a Village to attach an entire [t]own[] under the guise of a boundary agreement." The circuit court also reasoned that "[t]he very concept of boundary requires the existence of two units of government; otherwise[,] there can be no boundary." The circuit court concluded that finding for the Department and the Village would require it to read into the statute the ability to completely consolidate two municipalities via a cooperative plan, which the court would not do. Accordingly, the court reversed the Department's decision that approved the Plan and remanded the matter to the Department. The circuit court stayed its order pending appeal.

¶12 The Department and the Village appealed on both issues. The court of appeals affirmed the circuit court's decision on modified grounds. First, the court of appeals held that Mayville had standing to challenge the Department's decision approving the Plan. City of Mayville v. DOA, 2020 WI App 63, ¶12, 394 Wis. 2d 296, 950 N.W.2d 925. The court of appeals based its standing decision on its interpretation of Mayville's statutory rights. Id.

¶13 In addressing Mayville's statutory rights, the court of appeals concluded that Mayville should have been a party to the Plan. Id., ¶¶40-41. The court of appeals reasoned "[t]here

6

can be no dispute that the expansion of Mayville's area envisioned by the Village Detachment Area provision will physically alter Mayville's geographic city limits and, therefore, change Mayville's boundary line." Id., ¶41. Because Mayville was not a party to the Plan, the court of appeals affirmed the circuit court and held that the Department erroneously approved the Plan. The court of appeals did not address the circuit court's conclusion that the cooperative planning statute cannot be utilized for the purpose of consolidating municipalities.

¶14 On review, we agree with the court of appeals that Mayville has standing and that Mayville should have been a party to the Plan. Accordingly, for the reasons discussed below, we affirm the decision of the court of appeals.

## II. DISCUSSION

### A. Standard of Review

¶15 Whether a party has standing is a question of law that we review independently. Marx v. Morris, 2019 WI 34, ¶21, 386 Wis. 2d 122, 925 N.W.2d 112.

¶16 "When an appeal is taken from a circuit court order reviewing an agency decision, we review the decision of the agency, not the circuit court." Hilton ex rel. Pages Homeowners' Ass'n v. DNR, 2006 WI 84, ¶15, 293 Wis. 2d 1, 717 N.W.2d 166. As shown in Mayville's petition, it is not challenging the factual bases for the Department's decision, rather, it alleges that "the Department erred in applying the cooperative plan statute to the undisputed facts of record."

7

*City of Mayville*, 394 Wis. 2d 296, ¶16. The application of law to undisputed facts is a question of law that we review independently. *Cnty. of Dane v. LIRC*, 2009 WI 9, ¶14, 315 Wis. 2d 293, 759 N.W.2d 571. Finally, whether Mayville was required to be a party to the Plan is a question of statutory interpretation that we review independently. *Jefferson v. Dane Cnty.*, 2020 WI 90, ¶13, 394 Wis. 2d 602, 951 N.W.2d 556.

### B. Mayville's Standing

¶17 In all phases of this litigation, the Department and the Village have maintained that Mayville lacked standing. The circuit court denied their motion to dismiss, and the court of appeals similarly held that Mayville had standing. As we explain, we agree with the circuit court and the court of appeals.

¶18 If the Department's decision "adversely affect[s] the substantial interests of" Mayville, Mayville is an aggrieved party and entitled to judicial review of that decision. *See* Wis. Stat. § 227.52; *see also* Wis. Stat. § 227.53(1). Whether Mayville is an aggrieved party is a two-part inquiry. First, Mayville "must show that [it has] suffered or [was] threatened with an injury to an interest." *Krier v. Vilione*, 2009 WI 45, ¶20, 317 Wis. 2d 288, 766 N.W.2d 517. However, standing should be liberally construed. *City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 230, 332 N.W.2d 782 (1983). Accordingly, we have held that "even a trifling interest may be sufficient to confer standing." *Id.* Second, that interest must be one that is legally protectable. *Krier*, 317 Wis. 2d 288, ¶20.

8

¶19 The adversely affected interests that Mayville asserts are markedly similar to those of Madison in City of Madison v. Town of Fitchburg. There, the then-Town of Fitchburg began the process of incorporating. Town of Fitchburg, 112 Wis. 2d at 226. After Fitchburg adopted its incorporating resolution, Madison sued to "invalidate the resolution and enjoin the referendum." Id. at 227.

¶20 Fitchburg alleged that Madison lacked standing because "it d[id] not have a legal interest in the . . . incorporation proceeding." Id. at 228. We disagreed, concluding that Madison's interests included owning property in Fitchburg, annexing portions of Fitchburg and providing services to Fitchburg residents. Id. at 230-31. We also noted that if Fitchburg incorporated, Madison would lose its ability to exercise its extraterritorial zoning and extraterritorial plat approval rights because those rights are limited to unincorporated areas contiguous to a city or village. Id. at 231. Based on those rights taken together, we held that "Madison has a personal stake in the outcome of this controversy." Id. at 231-32. Accordingly, Madison had standing. Id.

¶21 Here too, Mayville asserts that the Plan: (1) "deprives Mayville of the right to exercise extraterritorial zoning and plat approval"; (2) "deprives Mayville of the opportunity and right to expand its boundaries by annexing, at the request of contiguous property owners, properties located in the unincorporated Town"; and

9

(3) "deprives Mayville the ability to recover millions of dollars in expenses incurred for constructing, operating and maintaining a sanitary sewer disposal facility and municipal water facility that were designed and constructed to provide sanitary sewer and water services to portions of the territories of the Village and the Town described in the Plan."

¶22 Pursuant to Wis. Stat. § 62.23(7a), cities are entitled to "exercise extraterritorial zoning power." However, that power extends to only the "extraterritorial zoning jurisdiction," which is defined as "the unincorporated area within 3 miles of the corporate limits of a first, second or third class city, or 1 1/2 miles of a fourth class city or a village." § 66.23(7a)(a). Further, cities are permitted to exercise extraterritorial plat approval in unincorporated areas within the same three or one and one-half mile zones. See Wis. Stat. § 236.02(5) and Wis. Stat. § 236.10(1)(b). Finally, cities and villages are permitted to annex "unincorporated territory which contains electors and is contiguous to a city or village." Wis. Stat. § 66.0219.

¶23 As we set forth in our recitation of the facts, upon approval of the Plan, the land surrounding Mayville will become an incorporated village.[6] Prior to the Plan, Mayville had extraterritorial zoning rights and extraterritorial plat approval rights within the unincorporated Town. Mayville was

---

[6] See generally Wis. Stat. § 66.0201 (Incorporation of villages and cities).

10

also statutorily permitted to annex areas of the Town contiguous to it, which the Plan restricts. It is of little import that the Plan provides for area that can detach from the Village of Williamstown and attach to Mayville. By way of the Plan, detachment is the only process by which Mayville can now expand. Moreover, retaining some ability to expand says nothing of Mayville's extraterritorial zoning or plat approval rights. The Plan extinguishes those statutorily granted rights. Accordingly, Mayville has legally protectable interests that are adversely affected by the Department's approval of the Plan, and it therefore has standing.[7]

### C.  The Cooperative Planning Statute

¶24  Wisconsin Stat. § 66.0307(2) permits municipalities to "determine the boundary lines between themselves under a cooperative plan." As we explain in more detail below, boundary line changes are permitted only if the municipalities, whose boundaries are affected by the cooperative plan, are parties to that plan. Id.

¶25  A cooperative plan must have certain content as set forth in Wis. Stat. § 66.0307(3)(c)-(g). "Each municipality that intends to participate in the preparation of a cooperative plan . . . shall adopt a resolution authorizing participation in the preparation of the plan." § 66.0307(4)(a). The

---

[7] As we explain in the following sections, Mayville also had an interest in being a party to the Plan; this interest, as set forth by the court of appeals, also conferred standing upon Mayville. City of Mayville, 394 Wis. 2d 296, ¶11.

11

municipalities must "hold a joint [public] hearing" on the resolution prior to submitting a cooperative plan to the Department. § 66.0307(4)(b). After the public hearing, the municipalities may adopt a final plan, "may adopt a resolution calling for an advisory referendum," and must submit the adopted final plan to the Department. § 66.0307(4)(d)-(f).

¶26 After receiving a proposed plan, the Department generally has 90 days to determine whether "[t]he content of the plan under sub. (3)(c) to (e) is sufficient to enable the department to make the determinations under subds. 2. to 5." Wis. Stat. § 66.0307(5)(c)1. Prior to making a final determination, the Department may, on its own motion, or must, if requested by "[a]ny person," hold a public hearing on the proposed plan. § 66.0307(5)(b).

¶27 Subdivisions (5)(c) 2. to 5. require the following:

> 2. The cooperative plan is consistent with each participating municipality's comprehensive plan and with current state laws, municipal regulations, and administrative rules that apply to the territory affected by the plan.
>
> 3. Adequate provision is made in the cooperative plan for the delivery of necessary municipal services to the territory covered by the plan.
>
> 5. The shape of any boundary maintained or any boundary change under the cooperative plan is not the result of arbitrariness and reflects due consideration for compactness of area. Considerations relevant to the criteria under this subdivision include quantity of land affected by the boundary maintenance or boundary change and compatibility of the proposed boundary maintenance or boundary change with natural terrain including general topography, major

12

watersheds, soil conditions and such features as rivers, lakes and major bluffs.

Wis. Stat. § 66.0307(5)(c)2.-5.[8] If a cooperative plan meets the above criteria, the Department shall approve it. § 66.0307(5)(c). However, the Department may disapprove or return a proposed plan to the municipalities to revise it if it does not meet the statutory criteria. See § 66.0307(5)(d). If the Department returns a cooperative plan for revision, the municipalities then have 90 days to revise and resubmit the plan. Id. Upon the final approval of a cooperative plan, parties have 60 days to seek review of the Department's approval. § 66.0307(11).

### D. The Department's Plan Review

¶28 Having set forth the general process that occurs when municipalities adopt a cooperative plan, we move to whether the Department validly approved the Plan without Mayville being a party to the Plan.

¶29 Whether Mayville was required to be a party to the Plan requires us to interpret the cooperative planning statute and its requirements. "Statutory interpretation begins with the language of the statute." State v. Mercado, 2021 WI 2, ¶43, 395 Wis. 2d 296, 953 N.W.2d 337 (citing State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110). That language is "given its common, ordinary, and accepted meaning, except that technical or specially-defined

---

[8] Wis. Stat. § 66.0307(5)(c) contains no subdivision (5)(c)4.

13

words or phrases are given their technical or special definitional meaning." Kalal, 271 Wis. 2d 633, ¶45. If the language of the statute is clear, we stop the inquiry. Id.

¶30 Wisconsin Stat. § 66.0307(2) describes the authority of municipalities to decide the boundary lines between them and sets forth which municipalities must be parties to a cooperative plan. Section 66.0307(2) provides:

> (2) Boundary Change Authority. Any combination of municipalities may determine the boundary lines between themselves under a cooperative plan that is approved by the department under this section. A single city or village and a single town may use the mediated agreement procedure under sub. (4m) to determine a common boundary line under a cooperative plan that is approved by the department under this section. No boundary of a municipality may be changed or maintained under this section unless the municipality is a party to the cooperative agreement. The cooperative plan shall provide one or more of the following:
>
> (a) That specified boundary line changes shall occur during the planning period and the approximate dates by which the changes shall occur.
>
> (b) That specified boundary line changes may occur during the planning period and the approximate dates by which the changes may occur.
>
> (c) That a required boundary change under par. (a) or an optional boundary line change under par. (b) shall be subject to the occurrence of conditions set forth in the plan.
>
> (d) That specified boundary lines may not be changed during the planning period.

14

If Mayville's boundary line is changed under the Plan, the Plan is not effective unless Mayville is a party to the Plan.[9] See generally § 66.0307(2).

¶31 "Change" as it is used in Wis. Stat. § 66.0307(2) is not specially-defined in the statute or closely related statutes; accordingly, we look to its common and ordinary meaning. Dictionaries can be utilized for this purpose. See Kalal, 271 Wis. 2d 633, ¶54. To change is "[t]o make different in some particular; [to] alter." Change, Merriam-Webster's Third Int'l Dictionary 374 (1986).[10] Therefore, used in this context, change means a "physical alteration of, or difference in" a boundary line.

¶32 Accordingly, we look to the Plan to determine whether it physically alters, or makes a difference in Mayville's boundary line. The sections in the Plan that could be read as changing Mayville's boundary lines are Sections 24 and 25. Section 24 creates the "Village of Williamstown Detachment Area." It reads:

---

[9] The court of appeals decision focused on "change" under Wis. Stat. § 66.0307(2); that is primarily our focus too. However, the statute includes boundaries that are "maintained" under a cooperative plan as another criterion that affects who must be parties to a cooperative plan.

[10] See also Change, American Heritage Dictionary 309 (5th ed. 2011) ("To cause to be different; [to] alter."); Change, Oxford English Dictionary 381 (6th ed. 2007) ("To substitute one thing for (another)."); Change, Random House Dictionary of the English Language 344 (2d ed. 1983) ("[T]o make the form, nature, content, future course, etc. of (something) different from what it is or from what it would be if left alone.").

15

In order to ensure that owners of territory adjacent and proximate to the City of Mayville will have the opportunity to receive higher level services through the City of Mayville, the parties hereby recognize a "Village of Williamstown Detachment Area."

The Village of Williamstown Detachment Area is depicted in the attached Exhibit D. It consists of all Town of Williamstown territory identified within the City of Mayville's 2030 Future Land Use Map——a total of 1,921.445 acres.

Upon completion of the Boundary Change described in Section 6 above, all territory located in the Village of Williamstown Detachment Area will become Village of Williamstown territory. However, the Town of Williamstown and the Village of Kekoskee, for themselves and for their successors in interest, including the Village of Williamstown, hereby agree that they will not object to, and will take all action necessary to effectuate, the detachment of territory from within the Village of Williamstown Detachment Area provided that the territory is contiguous to the City of Mayville and provided that the petition for detachment meets the requirements of Wis. Stat. § 66.0227 as they exist on the effective date of this Plan.

Section 25 provides:

The boundary changes under this Plan reflect due considerations for compactness of area. It does this in several ways.

The boundary change described in Section 6 will have the effect of eliminating the Town-Village boundary entirely, resulting in more orderly and less confusing boundaries as well as fewer boundaries than currently exist. Additionally, the outer boundaries of the combined municipality will initially be the same as the outer boundaries of the current Town of Williamstown. The current boundaries with the City of Mayville, the City of Horicon, the Town of Burnett, the Town of Theresa, the Town of Hubbard, and the Town of Chester will be unaffected.

Further, while the area to be attached under Section 6 is approximately 31 square miles, much of the

16

attachment area is territory within the Horicon Marsh. The practical area to be attached after adjusting for this acreage is approximately 18 square miles.

Finally, under the Village of Williamstown Detachment Area provisions of Section 24, the size of the Village of Williamstown will be reduced over time. Provided that detachments meet the criteria set forth in that Section, residents in the Village of Williamstown Detachment Area could detach the entire 2030 Future Land Use Map area, which consists of approximately three square miles and is nearly the size of the existing City of Mayville. As a result of these attachments, the Village of Williamstown will continually become smaller and more compact, and the City of Mayville will grow in an orderly and compact manner.[11]

¶33 Section 24 represents the type of boundary change that Wis. Stat. § 66.0307(2)(b) contemplates. Under Section 24, if the conditions of the Plan are met, Mayville's boundary line may expand. It may grow to encompass the territory that detaches from the Village of Williamstown and attaches to Mayville. To be sure, the Plan does not, in and of itself, effect a change in Mayville's boundary line, and Mayville's boundary lines may never change.[12] However, the Plan sets conditions that must be met if Mayville's boundary lines are to change.

---

[11] Neither Section 24 nor Section 25 were included in the initial plan. Each was added in response to the Department's suggestions regarding providing for heightened services (Section 24) and compactness (Section 25). The Department's administrative record reflects that the revised plan also failed to meet the provision of services and compactness requirements.

[12] The type of change in Section 24 is clearly distinguishable from Section 6 of the Plan, which by its terms eliminates the boundary between the Town and the Village. Section 25 confirms that the Plan effects this change. See supra ¶32.

17

¶34 The Department asserts that the Plan does not set any conditions on detachment, but rather, any future detachment is conditioned on the statutes that apply to all detachments. We are not convinced. Section 24 puts a very clear condition on any future detachment; it must "meet[] the requirements of Wis. Stat. § 66.0227 as they exist on the effective date of this Plan." That means, for the next 97 years[13] that Section 24 is in effect, any future detachments within the Village of Williamstown Detachment Area must meet the statutory criteria for detachment that existed in 2018. Section 25 also belies the Department's argument. It plainly limits future detachments to those that "meet the criteria set forth in [Section 24]."

¶35 Section 25 further confirms that Mayville's boundary lines may change via the Plan's contemplated detachments. It reiterates that Mayville could nearly double in size if the detachments occur and that "Mayville will grow in an orderly and compact manner" "[a]s a result of [Section 24] attachments." Further, as we discussed above, the territory surrounding Mayville will become incorporated territory, and due to that change, Mayville no longer will possess the right to annex that territory. Wis. Stat. § 66.0219. Upon approval of the plan,

---

[13] Section 29 of the Plan provides for a 10 year planning period "except that Section 24 regarding the Village of Williamstown Detachment Area will remain in effect until December 31, 2118 unless the Village of Williamstown and the City of Mayville, or their successors in interest, agree otherwise by written instrument consistent with applicable law at the time of its execution."

Mayville's ability to grow, or change its boundary lines, is limited to the specific lands and processes outlined in the Plan.  Said differently, the Plan not only contemplates a change to Mayville's boundary lines, it also has the effect of precluding Mayville's expansion if the Plan's conditions for changing its boundary line are not met.  Mayville should have been a party to, and had a voice in, proposed alterations to its municipal authority.

¶36  We conclude that the Plan includes a type of boundary change that is described in Wis. Stat. § 66.0307(2)(b) and that the Plan sets conditions to effect that change as contemplated by § 66.0307(2)(c).  Accordingly, before such a change could be effective, Mayville was required to be a party to the Plan. Because it was not, the Department erred as a matter of law in approving the Plan.[14]

### III.  CONCLUSION

¶37  We conclude first that Mayville has standing to seek judicial review of the Plan.  Next, we conclude that the "Village of Williamstown Detachment Area" set forth in the Plan changes Mayville's boundary line.  Because the Plan changed Mayville's boundary lines, Wis. Stat. § 66.0307(2) required that Mayville be a party to the Plan.  Because Mayville was not a

---

[14] Because we hold that Mayville was required to be a party to the Plan, we do not address whether the cooperative planning statute permits municipalities to consolidate.  See Maryland Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15.

19

party to the Plan, we conclude that the Department erroneously interpreted § 66.0307(2) in approving the Plan. Accordingly, we affirm the decision of the court of appeals, which remanded the Plan to the circuit court to remand to the Department.

*By the Court.*—The decision of the court of appeals is affirmed.