CITY OF KAUKAUNA, City of Menasha, Wisconsin, Village of Sherwood, Wisconsin, Nona Kyle and John Van Treeck, Plaintiffs-Appellants,

Patricia KUEPPER, Plaintiff,

v.

VILLAGE OF HARRISON, Wisconsin and Town of Harrison, Wisconsin, Defendants-Respondents.

Court of Appeals

*No. 2014AP2828. Submitted on briefs June 25, 2015.*
*—Decided August 26, 2015.*

2015 WI App 73

(Also reported in 870 N.W.2d 680.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Carl A. Sinderbrand* and *Kathryn M. Grigg* of *Axley Brynelson, LLP*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Andrew J. Rossmeissl* of *Herrling Clark Law Firm LTD*, Appleton.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. REILLY, P.J.   In 2013, the Village of Harrison was born from land within the Town of Harrison. Shortly thereafter, the Town and Village of Harrison entered into an intergovernmental cooperation agreement that transferred additional land to the Village and provided for the sharing of services between the two communities. The Cities of Kaukauna and Menasha, the Village of Sherwood, and individual property owners (collectively, the "Challengers") argue that the intergovernmental cooperation agreement is void as it involved a "major" boundary change that exceeds the scope allowed by statute and that the Town and Village did not strictly comply with statutory notice requirements. We disagree and affirm the circuit court. The plain language of WIS. STAT. § 66.0301(6) (2013–14)[1] does not limit the scope of boundary changes to only "modest" changes nor does it impose any notice requirements beyond those met by the Town and Village of Harrison in this case.

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

184

## BACKGROUND

¶ 2.   On February 19, 2013, voters in the Town of Harrison approved incorporating a 4.6-square-mile area as the Village of Harrison pursuant to WIS. STAT. § 66.0211. On June 6, 2013, the Town and Village of Harrison published notice of a joint public hearing "to discuss proposed Intergovernmental Cooperation Agreement affecting the provision of municipal services, apportionment of costs of municipal services, apportionment of assets and liabilities, and boundary line adjustments between the Town of Harrison and the Village of Harrison." The Town and Village of Harrison also sent notice of the meeting via certified mail to 1910 property owners entitled to receive notice pursuant to WIS. STAT. § 66.0301(6). In addition to the time, date, and location of the upcoming joint public meeting, the notice contained the following information:

> The purpose of this hearing is to gather community input on a proposed Intergovernmental Cooperation Agreement between the Town of Harrison and the Village of Harrison.

> The goal of the intergovernmental cooperation agreement is to ensure that both communities continue to receive the same level of services in the most cost effective manner. This will be accomplished by eliminating the doubling of service delivery and by jointly sharing staff and equipment between the Town of Harrison and the Village of Harrison. The intergovernmental cooperation agreement will also provide for greater efficiencies and improved service delivery to the public. All with the main goal of keeping taxes low for both the Town of Harrison and the Village of Harrison.

> The Intergovernmental Cooperation Agreement

will also include provisions for the apportionment of costs for municipal services, boundary line adjustments between the Town of Harrison and the Village of Harrison and the apportionment of assets and liabilities between the Town of Harrison and Village of Harrison, as well as other related topics.

¶ 3. The joint public hearing took place as scheduled on July 2, 2013, and following a closed session, the Town and Village boards unanimously adopted resolutions approving the agreement. Part of the agreement included transferring certain lands in the Town to the Village. The agreement permitted the Village board to "trigger the boundary line change" through the adoption of an ordinance, which the Village board passed on August 6, 2013. As a result of the boundary change, 1736 parcels that had been located in the Town were relocated to the Village, which now had a population of 9597. The Town was left with a population of 1316 people who resided in two areas designated as "growth areas" in intermunicipal agreements with the cities of Appleton and Menasha. Prior to the Village of Harrison's incorporation, the Town of Harrison had about 10,700 residents.

¶ 4. The Challengers filed this action, seeking to void the transfer of lands from the Town to the Village through the intergovernmental agreement. They moved for summary judgment, arguing that the agreement exceeded the authority granted by statute to the Town and Village of Harrison (collectively, "Harrison") and failed to comply with WIS. STAT. § 66.0301(6)(c)1. notice requirements. Harrison filed a cross-motion for summary judgment on the basis that the Challengers failed to state a claim upon which relief could be granted. The circuit court granted Harrison's motion, finding that the agreement did not exceed the author-

ity granted by § 66.0301(6) and that Harrison had properly complied with statutory notice requirements. The Challengers appeal.

## STANDARD OF REVIEW

█

¶ 5. As our task requires us to interpret and apply WIS. STAT. § 66.0301(6) to the undisputed facts in this case, our standard of review is de novo. *See Hempel v. City of Baraboo*, 2005 WI 120, ¶ 21, 284 Wis. 2d 162, 699 N.W.2d 551.

## DISCUSSION

¶ 6. We begin our analysis with the language of the statute. *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. WISCONSIN STAT. § 66.0301(6) provides in relevant part:

> (a) Any 2 municipalities whose boundaries are immediately adjacent at any point may enter into a written agreement determining all or a portion of the common boundary line between the municipalities.
>
> . . . .
>
> (c) 1. Before an agreement under this subsection may take effect, . . . it must be approved by the governing body of each municipality by the adoption of a resolution. Before each municipality may adopt a resolution, each shall hold a public hearing on the agreement or both municipalities shall hold a joint public hearing on the agreement. Before the public hearing may be held, each municipality shall give notice of the pending agreement and public hearing by publishing a class 1 notice, under [WIS. STAT.] ch. 985,

and by giving notice to each property owner whose property is currently located in that municipality and in, or immediately adjacent to, the territory whose jurisdiction will change. Notice shall be given at least 20 days before the public hearing and notice to property owners shall be made by certified mail.

■

¶ 7. The Challengers argue that WIS. STAT. § 66.0301 permits only "modest boundary changes incidental to" the sharing of services between governments and requires prehearing notice apprising property owners of the effects of the intergovernmental agreement on the boundary lines. We easily reject these arguments as the statute supports neither. "We should not read into the statute language that the legislature did not put in." *Brauneis v. State*, 2000 WI 69, ¶ 27, 236 Wis. 2d 27, 612 N.W.2d 635.

*Scope of Authority under WIS. STAT. § 66.0301(6)*

■

¶ 8. The Challengers concede that WIS. STAT. § 66.0301(6) "is silent on the scope of the boundary change[s]" permitted via intergovernmental agreements, yet they argue that the statute must be read to allow only limited boundary changes necessary to accomplish the statute's "primary goal of sharing services between municipalities." Otherwise, they say, the statute leads to "absurd and unconstitutional results." We disagree. The Challengers' argument would require us to read language into the statute that is not there and that is contrary to the plain language of the statute, which permits agreements affecting "all or a portion of the common boundary line[s]," § 66.0301(6)(a), and allows for boundary changes to remain in place after any sharing of services between

governments has ended, *see* § 66.0301(6)(b). No absurd or unconstitutional results occur even if one construes Harrison's boundary change to be "major" rather than modest or incidental.

■

¶ 9.   A statute may be said to have absurd results when the interpretation of its plain language leads to "unreasonable or unthinkable results" and "open disbelief of what a statute appears to require." *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 15, 293 Wis. 2d 123, 717 N.W.2d 258. Here, the Challengers argue that allowing municipalities to achieve major boundary changes via intergovernmental agreements would lead to an absurd result as it would render meaningless WIS. STAT. § 66.0307 and the agency and mandatory public referendum approval processes required for other WIS. STAT. ch. 66 jurisdictional alterations. They also contend that reading WIS. STAT. § 66.0301 to permit major boundary changes renders absurd its notice requirement by omitting important categories of property owners. We disagree with the Challengers that these results are absurd. The fact that the legislature allows a statutory process that the Challengers dislike does not make the process "unreasonable and unthinkable."

¶ 10.   Our statutes provide multiple methods for altering municipal boundary lines as well as multiple methods of incorporation, *see* WIS. STAT. §§ 66.0203, 66.0215, 66.0216, annexation, *see* WIS. STAT. §§ 66.0217, 66.0219, 66.0221, and consolidation, *see* WIS. STAT. §§ 66.0229, 66.0230. There is nothing absurd about the legislature creating an additional way to accomplish "the development of territory from town to incorporated status . . . in an orderly and uniform manner," WIS. STAT. § 66.0201(1), via agreements between gov-

ernments. There likewise is nothing absurd about the fact that the legislature might permit intergovernmental cooperation agreements to include major boundary changes without agency approval or a public referendum—at least no more absurd than the fact that a "minor" boundary change may be accomplished without agency approval or a public referendum.[2] Nor is it absurd that the legislature would create different procedural requirements from those already in existence in other statutes; in fact, that would appear to be precisely the point.

¶ 11. The Challengers also argue that permitting major boundary changes under Wis. Stat. § 66.0301 leads to an "absurd result" in that not all affected property owners in the participating jurisdictions would receive individual notice via certified mail before the change. They argue that property owners remaining in the Town of Harrison and property owners in the Village of Harrison who are not located immediately adjacent to the altered territory require direct notice as they will be affected much more due to the major boundary change than they would be by a minor one. The Challengers contend "[t]here is no rational explanation why the legislature would have omitted these two categories of property owners from those entitled to direct notice" under § 66.0301(6)(c)1. for major boundary changes. We are not persuaded.

¶ 12. First, we note that the categories of property owners highlighted by the Challengers are not

---

[2] The Challengers argue that the requirements to trigger a public referendum under Wis. Stat. § 66.0301(6)(c)2. are "impractical[]" when large numbers of property owners are affected. They do not argue that this is an absurd result, and we do not believe it to be so.

deprived of all notice. WISCONSIN STAT. § 66.0301(6)(c)1. provides for publication of "a class 1 notice, under [WIS. STAT.] ch. 985" in a newspaper. Second, we do not find it absurd that the legislature would limit the direct notification requirement to those property owners most likely to be affected, i.e., property owners within and immediately adjacent to the affected territory.

¶ 13. The Challengers also claim that WIS. STAT. § 66.0301 leads to unconstitutional results if it is read to permit major boundary changes as the statute would not provide equal protection to property owners residing in the Town and Village of Harrison who are omitted from the direct notice requirement. The Challengers concede they "are not asserting that the statute is facially unconstitutional," which means they are making an "as-applied" argument. *See Olson v. Town of Cottage Grove*, 2008 WI 51, ¶ 44 n.9, 309 Wis. 2d 365, 749 N.W.2d 211. The problem is that none of the Challengers are members of the class that they assert is being discriminated against. "[I]n an as-applied challenge, we assess the merits of the challenge by considering the facts of the particular case in front of us, 'not hypothetical facts in other situations.' Under such a challenge, the challenger must show that his or her constitutional rights were actually violated." *State v. Wood*, 2010 WI 17, ¶ 13, 323 Wis. 2d 321, 780 N.W.2d 63. We will not address the Challengers' hypothetical constitutional argument.

*Compliance with WIS. STAT. § 66.0301(6)(c)1.
Notice Requirement*

¶ 14. The Challengers next argue that the intergovernmental agreement is void as Harrison failed to

191

satisfy the statutory notice requirements. They argue that the notices should have informed property owners that approval of the agreement would result in relocating many of them or their neighbors into the new village. We disagree. Both notices provided by Harrison made reference to "boundary line adjustments between the Town of Harrison and the Village of Harrison" as being part of the intergovernmental cooperation agreement. This complied with the minimal notice requirement of WIS. STAT. § 66.0301(6)(c)1.

¶ 15. As the Challengers admit, WIS. STAT. § 66.0301(6)(c)1. does not expressly specify what information must be contained in the notices that are published and sent by certified mail. The statute simply requires that prior to the public hearing, the parties to a pending intergovernmental cooperation agreement "give notice of the pending agreement and public hearing by publishing a class 1 notice, under [WIS. STAT.] ch. 985, and by giving notice to each property owner whose property is currently located in that municipality and in, or immediately adjacent to, the territory whose jurisdiction will change . . . by certified mail." Sec. 66.0301(6)(c)1.

¶ 16. In contrast, numerous other statutes contained within WIS. STAT. ch. 66 establish specific content requirements for public notice. *See, e.g.,* WIS. STAT. § 66.0203(4)(b) (notice must contain "[a] description of the territory [to be incorporated] sufficiently accurate to determine its location"); WIS. STAT. § 66.0217(4)(a) (imposing six requirements on notices for annexations initiated by property owners); WIS. STAT. § 66.0219(1)(a) (requiring a city or village wishing to annex territory by referendum to provide notice by publishing a resolution that "contain[s] a description of the territory to be affected, sufficiently accurate to determine its loca-

tion"). Clearly, the legislature knows how to require specific public notice of proposed boundary changes; it chose not to do so in WIS. STAT. § 66.0301(6)(c)1.

¶ 17. The Challengers argue that, given the relatively recent adoption of WIS. STAT. § 66.0301(6), which was created by 2007 Wis. Act 43, § 19, we should be guided by open meetings cases to evaluate whether Harrison provided adequate notice. We disagree. The legislature explicitly requires that notices for open meetings "set forth the . . . subject matter of the meeting . . . in such form as is reasonably likely to apprise members of the public and the news media thereof." WIS. STAT. § 19.84(2). No such content requirement is imposed on notices under § 66.0301(6)(c)1. Therefore, the Challengers' analysis of whether Harrison's notice was "reasonably calculated to apprise members of the public of the subject matter of the pending agreement and public hearing" and extensive reliance on *State ex rel. Buswell v. Tomah Area School District*, 2007 WI 71, 301 Wis. 2d 178, 732 N.W.2d 804, is misplaced.

¶ 18. In sum, the plain language of WIS. STAT. § 66.0301(6)(c)1. does not call for the level or type of specificity asserted by the Challengers. Harrison's notice of "boundary line adjustments between the Town of Harrison and the Village of Harrison" met the statutory requirements.

## CONCLUSION

¶ 19. Harrison fully complied with all statutory requirements. We affirm the circuit court as nothing in WIS. STAT. § 66.0301 prohibits the scope or notice of the boundary change complained of in this case.

*By the Court.*—Order affirmed.