COURT OF APPEALS
DECISION
DATED AND FILED

July 20, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2022AP1467**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2021CV470**

**IN COURT OF APPEALS
DISTRICT IV**

CITY OF MAYVILLE,

   PLAINTIFF-APPELLANT,

V.

VILLAGE OF KEKOSKEE AND TOWN OF WILLIAMSTOWN,

   DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dodge County: KRISTINE A. SNOW, Judge. *Affirmed.*

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM.   The City of Mayville (the "City") appeals a circuit court order dismissing the City's action for declaratory judgment against the Town

of Williamstown (the "Town") and the Village of Kekoskee (the "Village") following summary judgment proceedings. The City argues that an intergovernmental agreement entered into by the Town and the Village is not authorized by WIS. STAT. § 66.0301 (2021-22)[1] and exceeds the scope of that statute. We reject the City's arguments and affirm the court's order.

## BACKGROUND

¶2 This is the parties' second round of litigation on the issue of boundary agreements between the Town and Village (sometimes referred to collectively as the "Respondents"). *See City of Mayville v. DOA*, 2021 WI 57, 397 Wis. 2d 496, 960 N.W.2d 416 ("*Mayville I*"). The following facts are undisputed.

¶3 The City, the Town, and the Village are all located in Dodge County. *Id.*, ¶3. The Village was incorporated in 1958 from territory that had previously been part of the Town. *Id.* In 2015, the Village notified the Town that it was having difficulty seating a full Village board, and as a result, was considering dissolution. *Id.*, ¶4. Representatives from the Town and Village met several times to explore their options and ultimately determined that the appropriate approach was to consolidate the territories of the Town and Village through a cooperative plan under WIS. STAT. § 66.0307. *Id.* In 2018, the Town and the Village entered into an Intragovernmental Cooperative Plan ("Cooperative Plan"). *Id.*, ¶¶5-6.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4 The Wisconsin Department of Administration ("the department") approved the Cooperative Plan; however, following that approval, the City filed a lawsuit challenging the department's approval. The case was litigated to our supreme court, which concluded that the department erred as a matter of law in approving the Cooperative Plan. *See id.*, ¶37. Our supreme court in *Mayville I* determined that, because the Cooperative Plan changed the City's boundary line, the City was required to be a party to the Cooperative Plan under WIS. STAT. § 66.0307(2). *Id.*, ¶2. Because the court resolved the appeal on the ground that the City was required to be a party to the Cooperative Plan, it declined to address the parties' arguments as to whether § 66.0307 "permits municipalities to consolidate." *Id.*, ¶36 & n.14.

¶5 Following the issuance of the decision in *Mayville I*, the Town and Village proceeded under a different statute, WIS. STAT. § 66.0301(6), entering into an "Intergovernmental Cooperation Agreement" ("the Agreement") that includes a new boundary line agreement, the details of which differ from the Cooperative Plan. Section 4 of the Agreement specifies the process to change the boundary line, as follows. When the Village adopts a "Triggering Ordinance," the boundary line between the Town and Village would be adjusted (as depicted in exhibits attached to the Agreement), and a "major portion" of the Town's territory would become part of the Village. Under the Agreement, a smaller portion of the Town land—the "Town remnant"—would not become part of the Village as a result of the initial boundary line change.

¶6 The Town remnant consists of four parcels of property, totaling approximately 163 acres, with three owners. The circuit court found that "these four parcels are vacant, contain no public improvements, and have no residents."

3

¶7      The Agreement states, in its Recitals, that the three owners of the Town remnant have indicated a shared desire to annex their properties to the City. Accordingly, these parcels are excluded from "the initial jurisdictional transfer" of land from the Town to the Village to provide the opportunity for the parcels' owners to pursue procedures to annex to the City, to the Village, or to another municipality, or, alternatively, "demonstrate a willingness and ability to remain independent."  Although not part of the initial jurisdictional transfer, the Town remnant "may be subject to a subsequent jurisdictional transfer."  In Section 4 of the Agreement, the Village makes two commitments to the owners of the Town remnant following the Village's adoption of the Triggering Ordinance:  (1) the Village will provide services to the Town remnant for at least 90 days; and (2) the Village will provide a 60-day period to allow the owners of the parcels in the Town remnant the opportunity to exercise one of their options, during which the Village will not exercise any authority it has to absorb the Town remnant.

¶8      Further under the Agreement, if after 60 days the Town remnant has not been annexed to another municipality and has not, "in the opinion of the Village," demonstrated the willingness and ability to remain an independent Town remnant, then the Village may "attach or annex said remnant parcels via any legal means set forth in Chapter 66 Wisconsin Statutes, including the adoption of an ordinance under [WIS. STAT.] § 66.0301(6)(e)."[2]

---

[2]  The portion of Section 4 that addresses the Town remnant provides:

> If the owners of the parcels [in the Town remnant] have not initiated procedures to annex said parcels to the City of Mayville, the Village, or another municipality, and have not otherwise, in the opinion of the Village, demonstrated their willingness and ability to remain an independent remnant Town within 60 days after the Village's adoption of the Triggering

(continued)

¶9      The Agreement also provides that, upon implementation through the Triggering Ordinance, all real, personal, and intangible property of the Town, and all its assets and liabilities, become those of the Village.  Section 6 of the Agreement also sets forth a process for the Town's governing body to transition into the governing body of the Village.  This process involves the sequential resignation of Village board members and the appointment of Town officials to fill these vacancies.

¶10     In 2021, the Village adopted a Triggering Ordinance as provided in Section 4 of the Agreement, which resulted in a change of the boundary line and all Town territory—with the exception of the Town remnant—becoming part of the Village.  The City then filed this action, seeking a declaratory judgment that the Agreement is void because it exceeds the Respondents' authority under WIS. STAT. § 66.0301(6).

¶11     The City filed a motion for summary judgment seeking an order declaring that the Agreement is void and unenforceable.  The circuit court denied the City's motion, rejecting the City's argument that the statutory scheme in WIS. STAT. ch. 66 does not authorize the Agreement.  The court explained that it was not persuaded by the City's argument that the purpose and effect of the boundary change provisions in the Agreement was to accomplish a "consolidation" that does not satisfy the statutory requirements for a consolidation.  Relying on our decision

_____

Ordinance, or if the City of Mayville or other relevant municipality rejects or fails to act on said property owners' annexation petition, the Village may at any time following such 60-day period attach or annex said remnant parcels via any legal means set forth in Chapter 66 Wisconsin Statutes, including the adoption of an ordinance under [WIS. STAT.] § 66.0301(6)(e).

in *City of Kaukauna v. Village of Harrison*, 2015 WI App 73, ¶¶8-10, 365 Wis. 2d 181, 870 N.W.2d 680, the circuit court determined that ch. 66 provides multiple processes to accomplish a municipality's jurisdictional changes and that "§ 66.0301 boundary agreements were not limited to 'minor' adjustments, and such agreements could be used to effect 'major' adjustments to the boundaries between a village and town."

¶12     The circuit court further concluded that the Agreement complies with the requirements of WIS. STAT. § 66.0301 and it rejected the City's arguments that: (1) public policy dictates that an agreement cannot require Village board members to sequentially resign and appoint Town officials to the Village board; (2) the Agreement effectively created a boundary line between the Village and the City where none existed prior;[3] and (3) the Agreement is not for a specified term, as required by § 66.0301(6)(b).

¶13     The circuit court entered an order denying the City's motion for summary judgment, granting summary judgment in favor of the Respondents, and dismissing the City's action. The City appeals.

---

[3] The City does not appear to renew this second argument on appeal. We note that, in the course of arguing that the Agreement constitutes an unauthorized consolidation, the City asserts that the Triggering Ordinance adopted pursuant to Section 4 of the Agreement establishes a common boundary line between the Village and the City where no boundary line previously existed, which the City summarily asserts "exceeds the authority granted [to the Respondents] by [WIS. STAT.] § 66.0301(6)(a)." However, the City's assertions do not appear to be advanced as a separate argument intended for resolution by this court. To the extent that the City means to make such an argument, it is insufficiently developed: the City makes no effort to explain this assertion by reference to facts, the language in § 66.0301(6)(a), or any other legal authority. Thus, to the extent the City means to reassert this argument on appeal, we reject it as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

**DISCUSSION**

*I. Standard of Review and Applicable Principles of Law.*

¶14    We review a circuit court's ruling on summary judgment de novo. ***Chapman v. B.C. Ziegler & Co.***, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

¶15    This appeal requires us to interpret statutes and apply them to the undisputed facts in this case. "Statutory interpretation presents a question of law that we review de novo." ***State v. Stewart***, 2018 WI App 41, ¶18, 383 Wis. 2d 546, 916 N.W.2d 188. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory interpretation 'begins with the language of the statute.'" ***Id.***, ¶45 (quoted source omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***Id.*** Additionally, statutory language must be "interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." ***Id.***, ¶46.

*II. The City Fails to Show that the Agreement Eliminates Common Boundary Lines Between the Town and Village, Resulting in Consolidation.*

¶16    Because this case centers on the meaning of WIS. STAT. § 66.0301(6), we first turn to the statutory language. *See* ***Kalal***, 271 Wis. 2d 633,

7

¶45. Section 66.0301(6)(a) states in relevant part: "Any 2 municipalities whose boundaries are immediately adjacent at any point may enter into a written agreement determining all or a portion of the common boundary line between the municipalities." For purposes of § 66.0301(6), a municipality means a city, village, or town. Sec. 66.0301(1)(c). Other provisions in § 66.0301 make clear that "determining" a common boundary line includes changing the boundary line, either temporarily during the term of the agreement or permanently. *See* § 66.0301(6)(a)2.-(b) (agreement may provide that specified boundary line "changes" occur). The statute also makes clear that one consequence of changing a boundary line is to transfer municipal jurisdiction over the affected area. *See* § 66.0301(6)(c).

¶17 The City argues that the Agreement is not authorized by WIS. STAT. § 66.0301 because, rather than "determining" a common boundary line between two municipalities, as provided in § 66.0301, the Agreement *eliminates* all common boundary lines between the Town and the Village. Consequently, the City contends, the Agreement results in the consolidation of the Town and the Village, which may occur only under the procedural and substantive requirements of the consolidation statutes, WIS. STAT. § 66.0229 or WIS. STAT. § 66.0230, and is not authorized by § 66.0301. This was the issue that the *Mayville I* court declined to resolve in interpreting substantially similar language in WIS. STAT. § 66.0307, the statute at issue in *Mayville I*. *See* § 66.0307(2) (authorizing agreement between municipalities to "determine the boundary lines between themselves"); § 66.0301(6) (authorizing agreement between municipalities "determining all or a portion of the common boundary line between the municipalities").

8

¶18     The Respondents counter that:  (1) WIS. STAT. § 66.0301(6) allows agreements that merge two municipalities into one; and (2) because the Town remnant remains, as does a boundary line between the Town and Village, the Agreement does not eliminate the boundary lines between the two municipalities or consolidate them.  We agree with the Respondents that the Agreement does not eliminate the boundary lines between the Town and Village; therefore, we need not and do not address the parties' arguments as to whether an agreement under § 66.0301 resulting in complete consolidation of municipalities is authorized under that statute.  *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive."); ***Maryland Arms Ltd. P'ship v. Connell***, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Typically, an appellate court should decide cases on the narrowest possible grounds.").

¶19     In support of our conclusion, we first note that this court has previously held that "major" boundary changes may occur pursuant to an agreement under WIS. STAT. § 66.0301.  In *Kaukauna*, a village and a town entered into an intergovernmental cooperation agreement under § 66.0301 that adjusted the boundary line, transferring additional land from the town to the village, and that also allowed the two municipalities to share services.  Other municipalities argued that § 66.0301(6) does not authorize two municipalities to undertake a "major" boundary change.  *Kaukauna*, 365 Wis. 2d 181, ¶¶1-3, 7-8.  We rejected this position, stating, "The plain language of WIS. STAT. § 66.0301(6) … does not limit the scope of boundary changes to only 'modest' changes."  *Id.*, ¶1; *see also id.*, ¶¶7-8.  In sum, we declined the invitation of the other municipalities to define how much of a boundary change is authorized under

§ 66.0301(6), determining that there is no statutory authority to fashion a bright-line rule quantifying how much territory may be transferred through an intergovernmental cooperation agreement.

¶20 The Agreement in this case likewise results in a "major" boundary change. As a result of the Agreement's boundary line determination, a substantial portion of the Town became part of the Village. But not all of the Town was absorbed into the Village: the Town remnant remained even after the boundary change. Thus, under the Agreement, the boundary line between the Town and the Village was not eliminated; there is still a geographical divide between the two. Therefore, and consistent with a plain language interpretation of the statute, the Agreement "determin[ed] all or a portion of the common boundary line between the municipalities." WIS. STAT. § 66.0301(6).

¶21 The City argues that the existence of the Town remnant does not alter the conclusion that the Agreement resulted in consolidation of the municipalities. According to the City, boundary changes often occur over a staggered time period and simply because the second Triggering Ordinance completing the physical consolidation of the Town and Village has not yet occurred does not mean that the Agreement did not consolidate the Town and Village.

¶22 However, as the Respondents note, under the terms of the Agreement, any subsequent boundary change involving the Town remnant is "delayed and optional," *i.e.*, part of a subsequent process that may or may not occur. Upon expiration of the 60-day period in which the Town remnant could become part of another municipality, the Agreement authorizes—but does not require—a second Triggering Ordinance to attach any part of the Town remnant to

the Village. Section 4 of the Agreement states that "the Village *may* at any time following such 60-day period attach or annex said remnant parcels via any legal means set forth in Chapter 66 Wisconsin Statutes, including the adoption of an ordinance under [WIS. STAT.] § 66.0301(6)(e)." (Emphasis added.) The City has presented no authority or developed argument that, as a result of the Agreement, it is a foregone conclusion that the Town remnant will become part of the Village.

¶23 In its reply brief, the City contends that the Respondents' argument is premised on the view "that consolidation involves only the physical transfer of territory." The City asserts that consolidation of two municipalities "results not only in the consolidation of the territory of the respective municipalities, but also consolidation of municipal services and municipal government, which … are provided for under the terms of the Agreement." The City continues:

> Finally, in making this argument, the Respondents fail to address the fact that the resignation of Village officials and the appointment of [Town] officials to fill those vacancies resulted in the elimination of the town government of [the Town]. The Agreement and the implementation of the Agreement by enactment of the first Triggering Ordinance and the forced resignation of Town officials left these property owners and these lands [in the Town remnant] in a legal limbo.

(Footnote omitted.) The City fails to explain how the elimination of the Town government or the alternative modes of consolidation it alleges relate to the express language of WIS. STAT. § 66.0301(6), which allows what occurs under the Agreement—namely, the determination or change in a boundary line between municipalities. We reject these arguments because they are both undeveloped and raised for the first time in the City's reply brief rather than in its brief-in-chief. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments); *State v. Reese*, 2014 WI App 27,

11

¶14 n.2, 353 Wis. 2d 266, 844 N.W.2d 396 (we need not address arguments raised for first time in reply brief as the adverse parties have not been able to respond to those arguments).

¶24    In sum, the City has failed to show that the Agreement eliminates the boundary lines between the Town and Village, thereby resulting in consolidation of the two municipalities.  Because the City's challenge to the Agreement is premised on this argument, its challenge to the Agreement likewise fails.

*III. The City Fails to Show that the Agreement Exceeds the Authority Granted the Respondents Under WIS. STAT. § 66.0301.*

¶25    The City separately argues that the Agreement is void because it "exceeds the authority granted by [WIS. STAT.] § 66.0301" in several respects.  We address these arguments, rejecting each of them.

A.  Section 6 of the Agreement.

¶26    The City challenges Section 6 of the Agreement, arguing that it exceeds the authority granted by WIS. STAT. § 66.0301 and "violates the public policy of the State of Wisconsin."  Section 6 sets forth a process involving the sequential resignation of Village board members and the appointment of Town officials to fill these vacancies, as follows:

> **Section 6:  Post-Boundary Change Village Board.**
>
> The current Town Board consists of three Supervisors, one of whom serves as Town Chairperson. The current Village Board consists of three Trustees, one of whom serves as Village Board President.
>
> The parties agree that as soon as practicable upon completion of the Boundary Change, the current Village Board members will sequentially resign from their respective positions, and the remaining Village Board members will appoint the current Town Board members as

> the resignees' replacements. It is the intent of this Section that upon completion of this process, the current Town Board members—each of whom will reside in the Village after the Boundary Change—will serve as Village Board members, with the current Town Chairperson serving as Village Board President. This Agreement is void if this transition does not occur as described herein, unless both parties agree in writing otherwise.
>
> After the initial appointments described in this section, all Village officer positions will be filled by either election or appointment, as appropriate pursuant to applicable law.

The City makes three specific arguments as to how this Section invalidates the Agreement under § 66.0301. As discussed below, none of these arguments are persuasive.

¶27 First, the City argues that, pursuant to subsec. (2) of WIS. STAT. § 66.0301, the purpose of agreements under § 66.0301 is to authorize two municipalities to contract "for the receipt or furnishing of services or the joint exercise of any power or duty authorized by law." *See* § 66.0301(2). The City argues that Section 6 of the Agreement exceeds the authority in § 66.0301 because the sequential resignation and appointment process in that section does not relate to the receipt or furnishing of services or the joint exercise of powers granted to the Respondents under § 66.0301(2).

¶28 As a preliminary matter, we note that this argument was not raised in the summary judgment proceedings in the circuit court and need not be considered on review as part of an argument for reversal of the circuit court decision. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (explaining that issues not raised in the circuit court may be forfeited and supporting the proposition that appellate courts generally do not address forfeited issues).

¶29   The City's argument also fails because the City cites no authority to support its assertion that a boundary agreement under subsec. (6) of WIS. STAT. § 66.0301 must also have the purpose in subsec. (2) of sharing services or exercising joint powers or duties, nor does the statutory language of § 66.0301(2) and (6) compel such a conclusion.  In fact, in **Kaukauna**, we rejected a similar argument.  In that case, the municipalities challenging the agreement argued that "§ 66.0301 permits only 'modest boundary changes incidental to' the sharing of services between governments."  **Kaukauna**, 365 Wis. 2d 181, ¶7.  We "easily reject[ed]" this argument because the statute did not support it.  **Id.**  We also rejected the argument that § 66.0301(6) "[m]ust be read to allow only limited boundary changes necessary to accomplish the statute's 'primary goal of sharing services between municipalities.'"  **Id.**, ¶8.  We further concluded that this argument

> would require us to read language into the statute that is not there and that is contrary to the plain language of the statute, which permits agreements affecting "all or a portion of the common boundary line[s]," § 66.0301(6)(a), and allows for boundary changes to remain in place after any sharing of services between governments has ended, *see* § 66.0301(6)(b).

**Id.**   Accordingly, we discern no valid basis for the City's argument that the Agreement exceeds the authority of § 66.0301 because Section 6's resignation and appointment process does not serve the purpose of sharing services or exercising joint powers or duties under subsec. (2) of that statute.

¶30   Second, the City argues that Section 6 of the Agreement violates public policy as reflected in WIS. STAT. § 17.24, a statute governing vacancies in village offices.  Section 17.24 provides:

> Except as provided in [WIS. STAT. §] 9.10, a vacancy in any elective village office may be filled by

14

appointment by a majority of the members of the village board for the residue of the unexpired term or until a special election is held, as ordered by the village board, or an office may remain vacant until an election is held. A vacancy in an appointive office shall be filled in the same manner as the original appointment.

¶31 The City acknowledges that WIS. STAT. § 17.24 requires that vacancies on the Village board be filled by members of the Village board or, alternatively, by a special election called for that purpose. But the City argues that Section 6 of the Agreement "is not only illegal in that it contractually requires Village officials to vote in a predetermined manner, but also because [it] violates the public policy established by the Legislature relating to the manner in which vacancies in Village offices are to be filled by appointment."

¶32 The circuit court rejected the City's challenge based on WIS. STAT. § 17.24, concluding that the appointment procedure outlined in § 17.24 "is precisely what occurred" under Section 6 of the Agreement and that "it was simply spelled out to provide for an orderly transition." The court explained:

> Section 6 provided that one [Village] board member would resign; the remaining two would appoint a new board member who was one of the Town … board members. Then the next [Village] board member would resign, the remaining two would appoint, and so on until all three [Village] board members were replaced with the three Town … board members. Although the [Agreement] contemplated the resignation of the existing … Village [b]oard, and outlined how that would occur, that is because presumably those members already wanted to resign. The [A]greement couldn't force those [Village] board members [to] resign and presumably any one of those [V]illage board members could have changed their minds. This potential outcome was contemplated with the following clause[:] "This Agreement is void if this transition does not occur as described herein, unless both parties agree in writing otherwise." In other words, if a [V]illage board member changed their mind and refused to resign, the [Agreement] would terminate unless the parties reached [a] further agreement in writing. The Court does not agree that this

procedure violated public policy for replacement of [V]illage board members underlying § 17.24 ….

¶33     The City does not explain how the circuit court's conclusion is in error, nor does it even discuss the court's decision on this issue. It offers no developed argument as to how Section 6 of the Agreement violates WIS. STAT. § 17.24 or the public policies on which it is based.[4] We decline to address the City's undeveloped argument on this point. *See **Pettit***, 171 Wis. 2d at 646.

¶34     Third, the City argues that Section 6 exceeds the authority granted by WIS. STAT. § 66.0301 because it denies the owners of the properties within the Town remnant the right to petition and seek redress from their government, and it also prevents them from exercising their rights under Section 4 of the Agreement to either become part of another municipality or demonstrate their willingness and ability to remain an independent remnant of the Town. Because this argument was not raised in the circuit court, we decline to address it as an argument for reversal. *See **Schill***, 327 Wis. 2d 572, ¶45 & n.21.

B.  <u>Section 10 of the Agreement.</u>

¶35     The City argues that Section 10 of the Agreement renders the Agreement void because it "establishes zoning and land regulations by contract" rather than through statutory procedures governing zoning and land development. The City contends that the Town's continuing efforts to consolidate with the

---

[4] The City further asserts, also without citation to authority, that any "action by a Village Board to fill a vacancy must be done in an open meeting, with notice of the potential action being listed on an agenda that must be published or otherwise provided to the general public." Again, the City does not develop this assertion into an argument supported by record citations and pertinent legal authority and we therefore do not address it. *See **Pettit***, 171 Wis. 2d at 646.

Village has a "singular purpose," namely, "to avoid and eliminate the extraterritorial land division and zoning authority of [the City]."

¶36    The Respondents argue that this court should not consider this argument because the City failed to raise it in the circuit court.  The Respondents note that this argument appears to be based on an affidavit that the City filed in the circuit court action nine days after the court issued a decision.  The record does not reflect that any argument was made in the circuit court based on this affidavit, in a motion for reconsideration or otherwise.

¶37    The City acknowledges that "[t]his argument was not articulated in its summary judgment brief filed [in circuit court]."  Nevertheless, the City argues that we should address this issue for three reasons.  First, it contends that this "issue" was raised in the circuit court because "[t]he issue in this case is whether various provisions included within the Agreement are authorized and permitted by [WIS. STAT.] § 66.0301" and that "[t]his is one of those provisions."  We reject this argument.  The City made very specific arguments to the circuit court regarding how, in its view, the Agreement is not authorized by § 66.0301, and the circuit court addressed those arguments.  The distinct, very detailed argument that the City now raises regarding the zoning and land division issues is qualitatively different from the specific arguments it raised in the circuit court.  Accordingly, we conclude that the City's failure to raise this argument in the circuit court precludes our review of it on appeal as an argument for reversal.

¶38    Next, the City contends that it failed to raise this specific challenge in the circuit court because documents confirming that the Town zoning code would be "impos[ed]" on the Village were not received until July 21, 2022, when the Village Clerk responded to a public records request.  The City states that "by

that date, all of the summary judgment briefs had been submitted to the court in accordance with the [c]ourt's scheduling order." We are not persuaded by this argument for the following reasons.

¶39 First, as the City acknowledges in its brief-in-chief, Section 10 of the Agreement "provides for the continued application of the Town's Comprehensive Plan and [the] Town's Zoning Code not only within the jurisdiction of the lands transferred from [the Town] to the Village[,] under the terms of the Triggering Ordinance, but to the unzoned land of the Village as well." Thus, the City appears to have been aware through the existence of the Agreement—prior to its summary judgment submissions—of the facts forming the basis of its argument on appeal that Section 10 "establish[es] zoning and land division regulations by contract" rather than establishing them through the statutes that the City now contends were not complied with here.

¶40 Second, even if the argument that the City now raises were somehow dependent on the Village's July 21, 2022 response to a public records request, the City offers no explanation as to why it did not request an opportunity for additional briefing on this issue in the circuit court once it became aware of this information. Accordingly, we reject the City's arguments related to zoning and other land regulation requirements.

IV. *The City Fails to Show that the Agreement is Void Because it Does Not Limit the Term of the Agreement to a Period of Time Not Exceeding Ten Years.*

¶41 As the City correctly notes, WIS. STAT. § 66.0301(6)(b) provides that the maximum term of an intergovernmental agreement authorized under § 66.0301 is ten years and that when the agreement expires, all provisions of the agreement expire, except the boundary change, which remains in effect until subsequently

changed. Based on this provision, the City argues that, because the Agreement in this case does not contain a specified term, it is "both inconsistent with, and contrary to, the requirements of § 66.0301(6)(b)." The circuit court rejected this argument, explaining:

> The [Agreement] was promulgated under the statute which allows for a 10[-]year term. In the absence of a shorter term stated in the [Agreement], the [Agreement] is necessarily limited by the term of the statute. The Court agrees with [the Village and Town] that under the statute, after 10 years have elapsed boundary changes will remain in place, but other aspects of the agreement will terminate.

The Respondents' position is the same as the court's: the term of the Agreement is the maximum term, and the Respondents did not include a specific durational term in the Agreement because they chose to use the maximum statutory ten-year term.

¶42 The City's only response to the circuit court's and the Respondents' position is as follows: "That argument not only ignores the requirements of [WIS. STAT. § 66.0301] relating to the term of the contract, but basic rules governing contract law. If a contract does not include a specific term, then that contract is indefinite." The City does not explain why the statutory ten-year term would not apply to the Agreement, does not provide any authority suggesting that a term must be included in an agreement under § 66.0301, and does not otherwise develop its argument on this point. Because the court's ruling is supported in law and logic, and given that the City advances no developed argument to the contrary, we reject the City's argument. *See **Pettit***, 171 Wis. 2d at 646.

**CONCLUSION**

¶43     For the reasons stated, we conclude that the City has not shown that the Agreement is contrary to WIS. STAT. § 66.0301; therefore we affirm the circuit court order dismissing the City's action on summary judgment.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.